IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INTERNATIONAL SHIPPING
AGENCY, INC.,

      Petitioner,

      v.

LUIS MALAVE TRINIDAD, UNION
EMPLEADOS DE MUELLES DE PUERTO
RICO (AFL-CIO), LOCAL 1901, ILA,

      Respondents.

CIVIL NO. 10-1627 (JAG/CVR)

## REPORT AND RECOMMENDATION

## INTRODUCTION

On July 8, 2010, above petitioner International Shipping Agency Inc. (hereafter "International Shipping") filed the instant petition for this Court to vacate the arbitration award issued against International Shipping, as the employer, in favor of respondents, member of the respondent, the Dock Workers Union of Puerto Rico (hereafter "the Union") and Luis Malavé Trinidad.   (Docket No. 1).

International Shipping charged five (5) of the Union's employees with a pattern of absenteeism from the time period of January through April of 2008 which ranged from forty-four (44) days to seventeen (17) days absences.  International Shipping suspended these employees resting on specific provisions of the Collective Bargaining Agreement ("CBA") in effect. The Union, representing these employees, grieved and the controversy was taken to arbitration. The arbitrator upheld the Union's grievance and ruled the suspensions imposed on the employees were not justified and were to be eliminated.

After the petition was filed, without an appearance from respondents, on September 7, 2010, International Shipping filed in the instant case a "Motion for Summary Judgment",

a Memorandum of Law and Statement of Uncontested Facts, which upon respondents' failure to oppose was ordered by the Court to be deemed as unopposed.  (Docket Nos. 6-9, 11 and 13).  The Court has referred the pending Motion for Summary Judgment to this Magistrate Judge for report and recommendation.  (Docket No. 14).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Federal Rule of Civil Procedure 56(c).  The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Federal Rule of Civil Procedure 56(e); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). The non-movant must do more than show "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

The record in this case is devoid of an opposition to the "Motion for Summary Judgment", for which respondents have failed to comply with the Local Rules which became

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 3

effective December 3, 2009.[1]  Local Rule 56(e) also provides that a fact shall be deemed admitted unless properly controverted; specific record of citation required. Thus, Local Rule 56(e) and case law required a non-movant party to a summary judgment to oppose the summary judgment motion with its opposition and other documents setting forth or evidencing facts on which the objection is based. *See* Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 43-44 (1st Cir. 2004).

However, even if petitioner's motion is deemed as unopposed, summary judgment is not granted in a vacuum.  Opposed or not, summary judgment can only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see* Fed.R.Civ.P. 56(e).  Carmona v. Toledo, 215 F.3d 124, 134 (1st Cir. 2000) (if adverse party fails to respond, "summary judgment, if appropriate, shall be entered").

We proceed now to determine whether summary judgment in this case is warranted even though an opposition is lacking.

### UNCONTESTED FACTS

The following issues are uncontested and relevant to the discussion below:

1. International Shipping is a stevedoring company engaged in the loading and unloading of ships in the Port of San Juan, Puerto Rico. *Petitioner's Uncontested ¶1; Exhibit 1, Arbitration Award, p. 5, ¶1.*

---

[1] Consonant with the requirements of Fed.R.Civ.P. 56, Local Rule 56(c) requires from a party opposing statement of material facts to submit with its opposition a separate, short, and concise statement of material fact.  The opposing statement shall admit,  deny or qualify the facts supporting the motion for summary judgment.

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 4

2. International Shipping and the respondent, Dock Workers' Union of Puerto Rico, Local 1901 (ILA) are signatories to a CBA in effect during all pertinent times which governs their relationship and the terms and conditions of employment of the Company's employees represented by the Union. *Petitioner's Uncontested ¶2.*

3. Paragraph 2, Article IX, page 14, of the CBA in its pertinent part provides the following:

> The Union and its members shall not sanction in incompetence resulting in the performance of the work of the employees covered by this Agreement, unauthorized stoppages, refusing to work, theft of committing malicious damages to the cargo. The fact that any of the aforementioned offenses or faults are committed shall be sufficient cause to dismiss the guilty person, provided that if the member of the Union is considered innocent it may take its case to the Arbitration Committee. Also, all employees shall cooperate to maintain the order, the discipline and the protection of the cargo and all Company property.

*Petitioner's Uncontested ¶ 2; Exhibit 1, Arbitration Award, p. 4.*

4. Paragraph 4, Article IX, page 14, of the CBA provides the following:

> The Company reserves the right to withdraw from work any employee covered by this Collective Bargaining Agreement who does not meet the qualities and abilities to perform the work assigned to it, without prejudice that the employee appeals to the officials of the Union for direct negotiation.

*See Id.*

5. Paragraph 18, Article IX, page 16 of the CBA provides the following:

> The Company has the prerogative as to how to carry out the work, setting standards and the formulation of reasonable work rules, but if the case arose that the Company puts into effect a rule which in its opinion is not in controversy with this CBA, said rule shall be discussed between the parties in order to correct the possible deficiencies or discrimination of the same, it being understood that mechanized systems which are not in use at present shall not be introduced without first negotiation it with the Union.

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 5

*Exhibit 1, Arbitration Award, p. 5.*

6. Paragraph 24, Article IX, page 18 of the CBA provides the following:

> The Company may take disciplinary action when an employee is unjustifiably absent during 15 or more days except when it is in use of leave or express permission by the Company, without prejudice that the employee may resort to the Grievance and Arbitration Committee.

*See Id.*

7. The CBA between the parties contains a grievance and arbitration procedure which in its Paragraph A, Article XII provides the following:

> In the case of any incident, dispute, controversy, claim regarding the interpretation of this Agreement, the Union or the Company, through their respective authorized representatives will immediately submit the controversy to an authorized representative of the Union or from the Company.

*See Petitioner's Uncontested ¶3; Exhibit 2, Certified Translation.*

8. The above provision has been interpreted by Arbitrators as requiring immediate action by the grieving party under penalty of making the grievance not arbitrable procedurally and consequently precluding the party to grieve the action in question.[2]

*Petitioner's Uncontested ¶4; Exhibit 3: Arbitration Case No. A-1807-96, of December 16, 1997; and Arbitration Case No. A-04-2782, of May 26, 2009.*

9. In general terms, a "checker" is an employee assigned by the Company to receive or dispatch the merchandise to and from the terminal who verifies that the merchandise is

---

[2] The administrative determinations by another arbitrator in regards to a separate case as to other disputes provide no particularized evidentiary value or precedent to this case. The matter therein raised dealt with issues in the year 1997 as to seniority status notified and not objected in a timely manner.

received or dispatched correctly and its condition. *Petitioner's Uncontested ¶5; Exhibit 1, Arbitration Award, page 5, ¶3.*

10. The checkers are members of the Union and are covered by the CBA. *Petitioner's Uncontested ¶6; Exhibit 1, Arbitration Award, p. 7, ¶ 6.* Petitioner's submit that on April 28, 2008, the parties had discussed the employees' cases pursuant to the CBA.[3]

11. International Shipping calls the checkers the previous day on or before 3:00 pm to assign them work. *Petitioner's Uncontested ¶7; Exhibit 1, Arbitration Award, p. 8.*

12. In these calls there are instances when the particular checker refuses the work-assignment with no valid reason, other instances when the checker does not respond to the call to the number provided by employee for work related notifications, and yet other instances when the checkers accept a work assignment but fail to show up. *Petitioner's Uncontested ¶8; Exhibit 1, Arbitration Award, p. 8; Exhibit 4, Employer's Brief, p. 6 ¶6.*

13. Each time any of the previously mentioned situations occurs, International Shipping has classified it as an absence. *Petitioner's Uncontested ¶9; Exhibit 1, Arbitration Award, p. 8; Exhibit 4, Employer's Brief, p. 6 ¶7.*

14. International Shipping sends the Union, sometimes daily but never less than once a week, a report entitled "recap" listing the checkers who were absent during the reported day or week and classifying the absence as having no excuse if they simply rejected the work

---

[3]    The record shows the petitioner dismissed its claim upon agreement with the Union and this issue was covered by way of reference in the arbitration award.

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 7

assignment for no valid reason, did not answer the work-assignment call (N/A) or as cancelled if they confirmed but later on cancelled or failed to show up. *Petitioner's Uncontested ¶10; Exhibit 5, Recaps₂.*

15. International Shipping stated never having received any objection or grievance about the "recaps" questioning the classifications of absent therein given. *Petitioner's Uncontested ¶11; Exhibit 4,Emplyer's Brief page 6, ¶11.*

16. These "recaps" were sent to the Union while International Shipping was complaining constantly about the checkers not responding to the work assignments as described above. *Petitioner's Uncontested ¶12; Exhibit 6, e-mails of December 6, 2007; December 14, 2007 and December 21, 2007.₃*

17. International Shipping informed the Union that, the next time a situation like this takes place, it "will be forced to take more severe disciplinary measures which may include dismissal." *Exhibit 7, Letter dated July 16, 2007.*

18. International Shipping's disapproval of this conduct included an instance in May 2007, when it suspended Víctor Aponte, Efraín González and Carlos Sánchez because of their absences. *Petitioner's Uncontested ¶13; Exhibits 8, letters dated May 22, 2007, addressed to Mr. Víctor Aponte, Mr. Efraín González and Mr.Carlos Sánchez.*

After a meeting with the Union, the suspensions related to the year 2007 were not enforced considering the transition process of the new Union President Mr. Malavé, but International Shipping warned them all that disciplinary measures would be taken should

this conduct persist in contravention of the dispositions of the CBA. *Petitioner's Uncontested ¶13; Exhibit 9, Minutes of the Grievance Meeting regarding the May 2007 suspensions, last page.*

19. According to the "recaps" between January and April 2008, the following individuals were absent from work the indicated number of times: Víctor Aponte – forty (40) days; Pedro Orraca – twenty three (23) days; Carlos Sánchez - twenty two (22) days; Efraín González – twenty three (23) days and Robert Ramírez – twenty two (22) days. *Petitioner's Uncontested ¶14;  Exhibit 5, Recaps; Exhibit 10, Summary of Absences.*

20. In said instances, Víctor Aponte showed a pattern of always missing work on Thursdays and Saturdays, having twenty two (22) of his forty (40) absences on these days. Carlos Sánchez showed a pattern of being absent Saturdays, Sundays and Mondays these being eighteen (18) of his twenty two (22) absences. Efraín González showed a pattern of being absent Saturdays and Sundays, for which he had sixteen (16) of his twenty three (23) absences. *Petitioner's Uncontested ¶14; Exhibit 4, Employer's Brief, p. 10, ¶21.*

21. Because of the absences detailed in the "recaps," on April 25, 2008, International Shipping suspended from work Mr. Orraca, Mr. Sánchez and Mr. Ramírez for a month and Mr. Aponte for six (6) weeks. *Petitioner's Uncontested ¶16; Exhibit 1,Arbitration Award, p. 6-7, ¶ 6-7.*

22. The Union grieved the suspension and the controversy went to arbitration in the Arbitration Bureau of the Department of Labor of Puerto Rico, before Hon. Arbitrator Leixa Vélez Rivera.  *Petitioner's Uncontested ¶17; Exhibit 1, Arbitration Award, p. 6, ¶ 6.*  The amount of absences charged to each employee was modified.

23. In the arbitration hearing, the Union challenged the absences charged to each claimant. *Petitioner's Uncontested ¶18; Exhibit 1, Arbitration Award, p. 7, Section V.*

24. As to the Union's argument regarding the absences, International Shipping argued the Union was precluded to challenge whether or not the employees in fact incurred in the charged absences because pursuant to Paragraph A, Article XII of the CBA if it wanted to do so it needed to grieve the classification of absence given by the Company immediately upon receiving the "recap" charging the employee with said absence. *Petitioner's Uncontested ¶19; Exhibit 4, Employer's Brief, p. 16-17.*

25. International Shipping also argued in arbitration, that it reserved the right in the CBA to establish work standards and rules, and in the exercise of such prerogative it determined that not attending work without a valid excuse, not answering the telephone when called to the number provided by the employee for that purpose and confirming assignment only to cancel at a later time without just cause was to be considered an absence. *Petitioner's Uncontested ¶20; Exhibit 4,Employer's Brief p. 16.*

26. On June 8, 2009 – notified that very same day – the arbitrator issued her award upholding the Union's grievance. *Petitioner's Uncontested ¶ 21; Exhibit 1,Arbitration Award.*

27. In the award, the Hon. Arbitrator concluded International Shipping, having the burden of proof, had not established the employees incurred in the charged absences. *Petitioner's Uncontested ¶22; Exhibit 1, Arbitration Award, p. 14.*

28. The Award does not address in particular International Shipping's contention the Union was impeded by virtue of Paragraph A, Article XII of the CBA from challenging

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 10

the classification of absence given to the conduct in question because it failed to present a grievance immediately upon receiving the "recap" charging the particular absences. *Petitioner's Uncontested ¶23; Exhibit 1.*

29. The Award does not directly address either International Shipping's contention that, having reserved in the CBA the right to establish work standards and rules, and in the exercise of such prerogative it has determined that not attending work without a valid excuse, not answering the telephone when called to the number provided by the employee for that purpose and confirming assignment only to cancel at a later time without just cause is to be considered an absence. *Petitioner's Uncontested ¶24; Exhibit 1.*

The documents referred by International Shipping and the same rationale herein submitted were presented before the arbitrator as to the grievances at issue, which ruled against International Shipping in setting aside the suspensions due to absences which had not been established nor the allegation that past practice in regards to the manner of establishing the absences had been accepted by the Union.

## STANDARD OF REVIEW FOR AN ARBITRATION AWARD

It is well established that a federal court's review of an arbitrator's decision is extraordinarily deferential. *See* Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001); Wheelabrator Envirotech v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996); Service Employees Int'l Union v. Local 1199 N.E., 70 F.3d 647, 651 (1st Cir. 1995);Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de Puerto Rico, 811 F.Supp. 41, 44 (D.P.R. 1993). "Judicial review of an arbitration award is among the narrowest known in the law." Maine Cent. R.R. Co. v. Bhd.

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 11

of Maintenance of Way Employees, 873 F.2d 425, 428 (1ˢᵗ Cir. 1989). A reviewing court

generally does not hear claims of legal or factual error the way an appellate court reviews

a lower court's decisions. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38,

108 S.Ct. 364, 370 (1987); Wheelabrator, 88 F.3d at 43. Judicial review of an arbitrator's

decision requires the court to consider both the CBA and the arbitral submission. Larocque

v. R.W.F., Inc., 8 F.3d 95, 96 (1ˢᵗ Cir. 1993); El Dorado Technical Services, Inc. v. Union

General De Trabajadores de Puerto Rico, 961 F.2d 317, 320 (1ˢᵗ Cir. 1992).

A court should uphold the arbitrator's interpretation of the CBA if, within the four

corners of the CBA, there is any plausible basis for that interpretation. Wheelabrator, 88

F.3d at 44; El Dorado, 961 F.2d at 319; Dorado Beach, 811 F.Supp. at 44. A court may not

overrule an arbitrator's decision merely because its interpretation of the CBA is different

from the arbitrator's. United Steelworkers of America v. Enterprise Wheel and Car Corp.,

363 U.S. 593, 599, 80 S.Ct. 1358, 1362 (1960); Boston Med. Ctr. v. Serv. Employees Int'l

Union, 260 F.3d 16, 21 n. 4 (1ˢᵗ Cir. 2001); Labor Relations Div. of Constr. Indus. v. Int'l

Bhd. of Teamsters, 29 F.3d 742, 745 (1ˢᵗ Cir. 1994); Dorado Beach Hotel Corp. v. Union De

Trabajadores De La Industria Gastronómica De Puerto Rico, 959 F.2d 2, 4 (1ˢᵗ Cir. 1992).

If the arbitrator is "even arguably construing or applying the contract and acting within the

scope of his authority," a court may not overturn the decision, even though the court may

be convinced that the arbitrator committed a serious error. Misco, 484 U.S. at 38, 108 S.Ct.

at 371; Providence Journal v. Providence Newspaper Guild, 271 F.3d 16, 20 (1ˢᵗ Cir. 2001);

Labor Relations, 29 F.3d at 745. If the CBA's language, taken in context with the

surrounding circumstances, is susceptible to different meanings, a reviewing court may not

meddle in the arbitrator's choice between two permissible interpretations. El Dorado, 961 F.2d at 320. If a reviewing court had the final say on the merits of an arbitrator's award, the federal policy of settling labor disputes by arbitration would be undermined. United Steelworkers, 363 U.S. at 596, 80 S.Ct. at 1360; Posadas de Puerto Rico Associates, Inc. v. Asociación de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987); Dorado Beach, 811 F.Supp. at 44.

An arbitrator's decision, however, is not entitled to *carte blanche* approval. Larocque, 8 F.3d at 96-97; Dorado Beach Hotel, 959 F.2d at 4; Dorado Beach, 811 F.Supp. at 44. The arbitrator may not ignore the CBA's plain language. Misco, 484 U.S. at 38, 108 S.Ct. at 371. Only in a few exceptional circumstances is a court entitled to vacate an arbitration award. A court may intervene when the party challenging the award establishes that the award was " '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is conceitedly a non-fact.' " McCarthy v. Citigroup Global Markets, Inc., 463 F3d 87 (1st Cir. 2006) (overruled on a different point in Hall Street Associates LLC v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396 (2008)); New England Health Care Employees Union v. R.I. Legal Serv., 273 F.3d 425, 427 (1st Cir. 2001) (*quoting* Teamsters Local Union No. 42 v. Supervalu, 212 F.3d 59, 66 (1st Cir. 2000)); Wheelabrator, 88 F.3d at 43-44. The award " 'must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.' " Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 466 (2000) (*quoting* Misco, 484 U.S. at 38, 108 S.Ct. at 371); Larocque, 8 F.3d at 97; Challenger Caribbean Corp.

v. Union General De Trabajadores de Puerto Rico, 903 F.2d 857, 861 (1st Cir. 1990). The court must refuse to overturn an award unless the arbitrator acted in a manner for which neither side could have bargained. Wheelabrator, 88 F.3d at 44; Federación Central de Trabajadores v. Vaquería Tres Monjitas, Inc., 194 F.Supp.2d 61, 64-66 (D. Puerto Rico 2002).

**LEGAL ANALYSIS**

**A. Arbitration Award and Interpretation of the CBA.**

Petitioner International Shipping is moving the Court, upon filing of the petition and the "Motion for Summary Judgment," to vacate the arbitration award because the arbitrator allegedly ignored the plain language of the CBA requiring that any dispute in the interpretation of the contract be "grieved immediately" and the Union failed to do so when it did not object initially to the recap reports the employer had sent at several instances notifying the absences of the employees classified as checkers. In the alternative, petitioner International Shipping seeks the arbitrator's ruling be set aside in failing to determine that custom and practice regarding what an absence is had been accepted by the Union for the CBA contained as management prerogative the establishment of work rules and norms[4] –to include what an absence is. Finally, in upholding the Union's grievance and ruling the employer could not suspend the employees as a disciplinary action, the arbitrator be

---

[4]  The employer cites to Paragraph 18, Article IX, p. 16 wherein "[t]he Company has the prerogative as to how to carry out the work, the setting o standards and the formulation of reasonable work rules, but if the case arose that the Company puts into effect a rule which in its opinion is not in controversy with this Collective Bargaining Agreement, but if there results, however, that the Union considers it to be in controversy with the terms of the Collective Bargaining Agreement, said rule shall be discussed between the parties in order to correct the possible deficiencies or discrimination of the same, it being understood that mechanized systems which are not in use at present shall not be introduced without first negotiating it with the Union."

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 14

considered to have ignored the clear language of the CBA indicating the employer could discipline employees having fifteen (15) or more absences.[5]  *(Summary Judgment Memorandum, Docket No. 7)*.

An arbitration was held in this case in response to a grievance filed by respondent the Union, to challenge the employer and herein petitioner, International Shipping's disciplinary action as to Union members for their absenteeism.

An award was rendered by the arbitrator, after analyzing the CBA, ruling that petitioner's disciplinary actions were not justified since the employer, International Shipping, did not met its burden to establish the suspensions imposed were justified for it failed to establish the employees at issue had incurred in the absences alleged by the employer.  The employer, International Shipping, was to prove the existence of mutual acceptance by the parties to the CBA in regard to the manner of establishing the absences. The arbitrator concluded the evidence reviewed had not shown  the employer's manner to classify the absences of "employees by call", such as the checkers who were object of the employer's discipline, had been accepted by the Union and, thus, could be considered as absences.  Instead, the arbitrator found the employer incurred in inconsistencies in the handling of an employee who notifies he/she is not going to attend work, for in some cases the employer gave the impression the employee had a determined amount of time in advance to notify if he/she is going to be absent or not and in others it seemed to indicate the employee had another period of time to inform this.  The CBA did not specifically state

---

[5]  The employer refers to Paragraph 24, Article IX, p. 18 wherein "[t]he Company may take disciplinary action when an employee is absent unjustifiably during 15 days or more except when it is in use of leave or express permission of the Company, without prejudice that the employee may resort to the Grievance and Arbitration Committee."

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 15

how much time in advance the employee must call to notify he/she is going to be absent. (*Docket No.8, Exhibit 8-2, pp. 10-12*).

Thus, the arbitrator concluded the employer did not establish certain clear written rules or standards of conduct to that effect, and/or what sanction shall be imposed to the employee for his/her failure to comply with same.  In addition, the arbitrator concluded the employer did not prove it used progressive or corrective discipline correctly; that each one of the plaintiff employees were warned, verbally or in writing, prior to the suspension imposed.  A prior suspension from employment and salary to four (4) of these employees in May of 2007,  had remained without effect upon agreement of the parties, for which it lacked any probative value.  (*Id., p. 13*).

The award at issue in this petition indeed established that the arbitrator considered the same documentation and arguments raised in this action by petitioner, International Shipping and that it did not met its burden of establishing the absences upon which the suspensions were based.[6]  The award also stated the alleged recaps report, wherein the absences were reported to the Union by the employer, were not conduct which could qualify as past practice, since the intention of both parties, the employer and the Union in interpreting the CBA in a particular manner cannot be dependent on one of the parties, in the instant case, the employer International Shipping, by its own acts to obligate the other party.  *See Award pp. 9-10.*   The arbitrator considered that the testimonies as to the practice were conflictive and did not allow a determination as to the existence of such a

---

[6]  The award concluded it behooves the employer to establish definitions and clear and precise parameters to address problems of absenteeism and the employer did not prove the employees incurred in the absences alleged. *Award, p. 14.*

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 16

practice and the mutual acceptance of the parties to the past practice alleged was not established by the party having the burden, International Shipping. *Id. p. 10.*[7]

It is within the scope of judicial review of an arbitrator's award to engage in substantive review only to determine whether the award is unfounded in fact, based on reasoning palpably faulty that no judge could have made such a ruling or was mistakenly based on crucial assumption which was conceded a non-fact. An arbitrator's findings of fact are virtually unappealable, even if the arbitrator is mistaken about some of the facts. *See* El Dorado Technical Servs. v. Union Gen. De Trabajadores de PR, 961 F.2d 317, 320 (1st Cir. 1992).[8]   Only when the award, unfounded in reason and fact and based on reasoning so palpably faulty, it fails to draw its essence from the CBA and must be overturned.  The arbitrator's role is to resolve disputes, based on relevant evidence, once parties to a dispute have had a full opportunity to present their cases, for it is the judge of admissibility and relevancy of evidence submitted in arbitration proceedings. Judicial deference to arbitration does not grant *carte branche* approval to any decision of the arbitrator, but courts are precluded from interfering with arbitration awards for mere errors in assessing credibility of witnesses.[9]

Thus, in the absence of exceptional circumstances, a court may not overturn an award based on the arbitrator's determination of relevancy or persuasiveness of evidence

---

[7]  The arbitrator found inconsistencies in the testimonies given by the representatives of the employer as to the handling of the employee who notifies it is not going to attend.  *Id. pp. 11-12.*

[8]  International Shipping Agency, Inc. v. Union de Empleados de Muelles de Puerto Rico, 21 F.Supp.2d 100 (D. Puerto Rico 1998).

[9]  An arbitrator's resolution of credibility issues does not constitute grounds for vacating the arbitration award. International Broth. of Firemen & Oilers, Local 261 v. Great Northern Paper Co., 765 F.2d 295 (1st Cir. 1985).

International Shipping Agency, Inc. v. Luis Malavé Trinidad, et al
Civil No. 10-1627 (JAG-CVR)
Report and Recommendation
Page No. 17

submitted by the parties.  Hoteles Condado Beach, La Concha and Convention Center  v. Unión de Tronquistas Local 901, 763 F.3d 24 (1ˢᵗ Cir. 1985).  Exceptions to the general rule that courts are not to review the merits of an arbitration award are rare.  Challenger Caribbean Corp., 903 F.2d at 861.

The arbitrator's determination in regard to the issue raised by International Shipping it herein seeks to vacate as to past practice and the establishment thereunder of the employees' absences, which served as ground for the sanctions, may not be herein disturbed.  Arbitrators may use past practice as a contractual interpretive device or as relevant evidence.  *See* United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347 (1960);[10] Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 21 (1ˢᵗ Cir. 2001).  These were the same grounds petitioner seeks to vacate the award, in that it was entitled under the CBA to discipline employees having more than fifteen (15) absences.  Since the absences were not deemed established, the ruling as to this provision of the CBA need not be further pursued.

It remains to be discussed, whether errors of law attributed to the arbitrator's award to be reviewed *de novo* by the court are herein involved and were ruled contrary to the CBA. International Shipping continues to submit in this petition the Union should be considered

---

.        [10]   United Steelworkers of Am., 363 U.S. at 581-82 (the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial custom-the practices of the industry and the shop-is equally a part of the collective bargaining agreement although not expressed in it.); Strathmore Paper Co. v. United Paperworkers Int'l Union, Local 197, 900 F.2d 423, 427-28 (1ˢᵗ Cir.1990) (noting that an arbitrator may factor past practice into his decision when the contract does not expressly prohibit it).

precluded from grieving the absences already attributed by the employer against the employees subject to sanction of work suspension for, as shown on the recaps, the Union failed to timely object.

International Shipping attests the CBA provision as to the employer's right to establish work standards and rules, CBA ¶18,[11] also upholds the management's prerogative to determine who is not attending work and is to be considered absent without a valid excuse or by not answering the telephone when called or those confirming to attend and later cancelling without just cause. The recap reports must be deemed to have established –upon failure to timely object same– to preclude the Union from resorting to the Grievance and Arbitration provision which provided that any dispute, controversy or claim about the interpretation of the CBA had to be submitted immediately. Thus, International Shipping submits by the award allowing the grievance of the Union in regards with the sanction for the absences, it was contrary to the provisions of the CBA. In support it has submitted other interpretations in separate cases by the Labor Bureau's arbitrators which preclude the grievance if not submitted immediately. However, the former interpretations are not deemed relevant to this case.

International Shipping submits its interpretation of the immediate action from the Union is required from any possible dispute to a potential grievance or otherwise the right

---

[11] "The Company has the prerogative as to how to carry out the work, setting standards and the formulation of reasonable work rules, but if the case arose that the Company puts into effect a rule which in its opinion is not in controversy with this CBA, said rule shall be discussed between the parties in order to correct the possible deficiencies or discrimination of the same, it being understood that mechanized systems which are not in use at present shall not be introduced without first negotiation it with the Union." *CBA ¶18*.

to proceed to arbitration would be considered waived.[12]  It is clear from the record and documents submitted, the events as to the recaps report being sent to the Union occurred before the issues were well suited to initiate an arbitration on the sanctions thereafter imposed on the employees.

It is an acceptable principle that a party cannot be required to submit to arbitration any dispute which it has not agreed to submit and no where in the CBA is there any provision that each and every report, e-mail, notice or determination by the employer as to which the Union receives notice and may have some objectionable issue needs to be immediately disputed even when no consequences are resulting at the time.

First, the recaps reports sent by International Shipping to the Union, alleged to be supporting the absences of the employees, and as to which it did not receive any objection or grievance from the Union questioning the classification of absent provided, also rest on the arbitration award's finding it should not be construed as an acceptable practice between the parties.  Second, the International Shipping expectation that its practice to report through recaps the absences, –which credibility was not afforded by the evidence presented before the arbitrator–, does not specifically rely in the CBA provisions.  It is one thing to allow the employer to determine sanctions as to employees having more than fifteen (15) absences, as provided by CBA, it is another the absences report need to be immediately rebutted by the Union either daily or weekly as sent or notified by the employer even when

---

[12]  Paragraph A, Article XII provides:

> In the case of any incident, dispute, controversy, claim regarding the interpretation of this Agreement, the Union or the Company, through their respective authorized representatives will immediately submit the controversy to an authorized representative of the Union or from the Company.

no disciplinary sanctions are contemplated and no grievance has become ripe.  In the present case, the Union filed for arbitration in a timely manner within the employer's notice of the sanctions to be imposed to suspend from work those employees it considered to have been absent on numerous occasions.  The submission before the arbitrator reduced many of the absences to a particular number and as to those absences that remain for consideration, the award determined the employer had failed to establish these absences by credible and consistent evidence.

Thus, the award is not considered subject to judicial review within petitioner's request that it be vacated.  This Court cannot intervene with the arbitration award because International Shipping has failed to establish that the award was " '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is conceitedly a non-fact.' " McCarthy, 463 F3d at 87.

Applying the above discussed standards to this case, it is recommended that petitioner's "Motion for Summary Judgment" be DENIED.  As such, the Petition for Review of the Arbitration Award in this case should also be DENIED.  (Docket No. 6).

## CONCLUSION

In view of the foregoing, it is recommended that petitioner's "Motion for Summary Judgment" (Docket No. 6) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and

recommendation. *See also* Amended Local Rules.[13]  Failure to file same within the specified

time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-

151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch

Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic

efficiencies would be frustrated and the magistrate's role reduced to that a mere dress

rehearser if a party were allowed to feint and weave at the initial hearing, and save its

knockout punch for the second round").

In San Juan, Puerto Rico, this 27th day of January of 2011.

                              s/**CAMILLE L. VÉLEZ-RIVE**
                              **CAMILLE L. VÉLEZ-RIVE**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[13]  Local Rule 72 (d), as amended December 3, 2009 provides:
    (d)  Objections to Report of Proposed Findings and Recommendations as to Dispositive Motions and Prisoner Cases.
    Any party may object to the magistrate judge's report of proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) within fourteen (14) days after being served a copy of it. The party shall file with the clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection.